SHEPHERD (KING v.). See Case No. 7.804.

SHEPHERD (UNITED STATES v.). See Case No. 16,274.

SHEPHERD, The ELMIRA. See Case No. 4,418.

———

## Case No. 12,756.
### SHEPLEY v. RANGELY.
[2 Ware (Dav. 242) 246; [1] 5 N. Y. Leg. Obs. 5.]

District Court, D. Maine. Oct. Term, 1845.

QUIETING TITLE—POSSESSION—EVIDENCE INCONCLUSIVE—BILL TO PERPETUATE TESTIMONY—ACTION AT LAW.

1. In a suit in equity for a perpetual injunction, it appeared that the plaintiff claimed title under a deed from John Spring, dated April 14, 1832. The defendant, under a levy on an execution of July 9, 1839, traced back his title to a mortgage of Spring, of January, 1830. Neither party was in possession of the land, but Spring was in possession, holding adversely to both. Held, that if this was to be considered as in the nature of a bill quia timet it could not be supported until the title was determined by a suit at law.

2. A court of equity has jurisdiction in such cases, to decide on facts without the intervention of a jury, but will not usually do so when the evidence is contradictory or inconclusive.

3. This was more properly in the nature of a bill of peace. To maintain such a bill when the interest of the plaintiff is present, and not future, as in remainder or reversion, and he has a present right to the possession, three things must concur. 1. He must have the actual possession. 2. That possession must be disturbed. 3. His right must have been previously established at law.

[Cited in Stark v. Starr, 6 Wall. (73 U. S.) 409; Holland v. Challen, 110 U. S. 19, 3 Sup. Ct. 497; Sharon v. Tucker, 144 U. S. 543, 12 Sup. Ct. 722.]

4. Where a party cannot bring his title to an immediate judicial examination because his in-

[1] [Reported by Edward H. Daveis, Esq.]

terest is future, as in remainder, or because he is in possession, the only bill which can be maintained, is a bill to perpetuate the testimony.

5. A court of equity will not entertain a bill, under the pretext of quieting the possession, to determine the rights of parties where there has been no suit at law to try the title.

The facts of this case, as they appear in the pleadings and evidence, are shortly as follows:·John Spring and Olive, his wife, on the 4th of January, 1830, mortgaged the land in controversy, together with other real estate, lying in the town of Saco, to the Saco Bank, to secure the payment of a note of $6000. Spring, April 14, 1832, conveyed, by a quitclaim deed, to Ether Shepley, the equity of redemption of certain lands mortgaged to Sarah Parkman, and by the same deed conveyed this land now in controversy, which was included in the mortgage to the bank, for the consideration of $1000. On the 9th of May, or of June, 1833 (for the evidence leaves it uncertain which), the bank by their attorney, Ether Shepley, the plaintiff's grantee, entered on the land for condition broken, and on the 9th of June, 1836, three years having elapsed, the mortgage, as contended for the defendant, became foreclosed, and the title of the bank absolute. On the 13th of September, 1833, the bank conveyed all its estate and effects to trustees to sell and dispose of, for the purpose of winding up the business of the bank and dividing its effects among the stockholders. On the day when the time of redemption expired, that is, on the 9th of May or June, 1836, Spring offered in payment of the debt, the check of Webster, payable at a future day, but the trustees refused to receive it as payment, and it was left with them as collateral security for the debt, and the following day Spring assigned to them a policy of insurance on his house, which was included in the mortgage as further security. On the 13th of July, 1836, one month or more after the foreclosure of the mortgage, on the payment of the full sum due to the bank, the trustees, at the request of Spring and his wife, by a deed of quitclaim conveyed the land to Webster; the money, to the amount of $5000, having been advanced by him; and the balance, $200, was paid by Spring. The deed recites, that entry had been made to foreclose the mortgage, and that the right of redemption had expired, and that Webster having, at the request of Spring, paid the amount that would have been due on the mortgage, the conveyance was made at the request of Spring and his wife, to Webster, and was intended to discharge all the title acquired by the bank. The deed was drawn by the plaintiff's grantor, and the acknowledgment taken by him. Webster, as is alleged in the ·bill and not denied in the answer, conveyed the land by deed, April 12, 1832, to Daniel Burnham; but the defendant [James Rangely] alleges, that before that time, he attached the land as the property

of Webster in a suit against Webster and Burnham, and prosecuted his suit to judgment, on which execution was issued in June, 1832, and within thirty days after the rendition of the judgment levied on the land. On the 5th of April, 1843, Ether Shepley conveyed his title by a deed of gift to the plaintiff [John R. Shepley], and he claimed to hold the land under Spring's deed to his grantor, of April 12, 1832. The defendant claimed title under his levy, tracing it back to the mortgage to the bank, of January 4th, 1830. The prayer of the bill was, that the land may be declared to stand redeemed from the mortgage, that the levy of Rangely may be declared to be inoperative and void, and that the defendant be required to release his title to the plaintiff, and be perpetually enjoined from setting it up against the plaintiff.

G. F. Shepley, for plaintiff.

G. S. & E. H. Daveis, for defendant.

WARE, District Judge. I have not thought it necessary to examine all the questions which arise out of this record, and which have been so elaborately and learnedly argued at the bar, because, from the view I have taken of it, the decision of the cause must turn on the single question of the jurisdiction of the court. The bill seeks to draw into equity questions which seem to me properly belong to the forum of law. The plaintiff claims title under a deed to his grantor, Ether Shepley, of John Spring, dated April 14, 1832, and the defendant under a levy of an execution in his favor of July 9, 1839, against Webster and Burnham, and traces back his title through Webster and the bank to the mortgage of Spring and his wife, of January 4, 1830. The titles of both parties are strictly legal, nor do I see that they are affected by any equities that should withdraw them from the cognizance of a court of law to the jurisdiction of equity. There is nothing in them that I see, which will prevent a court of law from doing complete justice between the parties. In truth, the bill does not suggest nor rely on anything of the kind, or at least on anything that should give jurisdiction to equity until the title of the plaintiff is established at law.

The bill sets out the title claimed by the defendant, and alleges that nothing passed by the levy, inasmuch as there was no foreclosure under the mortgage: First, because there was no valid entry to foreclose the three-acre lot in controversy; secondly, because the mortgage was discharged by the payment of the debt. Then, as a ground of giving the court jurisdiction, it is contended that this outstanding claim of superior title by the defendant, may hang as a cloud over that of the plaintiff, and that he is entitled, in equity, to have that removed, that is, to have the pretended title of the defendant declared void, and to have a perpetual injunction against his ever setting it up in a court

of law in opposition to that of the plaintiff. The bill may, therefore, be considered as in the nature of a bill quia timet and bearing an analogy to that class of bills which are brought to have void instruments delivered up and canceled. 2 Story, Eq. Jur. §§ 694, 698. In these cases the old practice of the court was, when the validity of the instrument was in controversy, to direct a trial by jury, to ascertain the fact. But, as the court has jurisdiction to determine matters of fact without the intervention of a jury, latterly the more convenient and less expensive course, in some cases, is adopted for the court to determine the fact itself. Smith v. Carll, 5 Johns. Ch. 118; Newman v. Milner, 2 Ves. Jr. 484; Jervis v. White, 7 Ves. 413. Still it is the present practice of the court when the facts are doubtful and the evidence contradictory and not entirely conclusive, to take the opinion of a jury. 2 Story Eq. Jur. § 702.

The validity of the defendant's title, which the plaintiff asks the court to declare void and restrain him from setting up at law, depends on questions partly of fact and partly of law. It is founded on a levy on the land as the property of Webster, who derived his title under a deed from the trustees of the bank. It is not disputed that the legal estate was transferred by the bank to the trustees, and that the deed of the trustees was sufficient to convey whatever legal interest was vested in them at the time of the conveyance. If any interest was transferred, and that was such an interest as could be taken in execution, then it is not denied that the levy was good to pass that to the defendant. The questions, then, which arise and have been argued at the bar are, whether any, and, if any, what estate passed to Webster. The argument of the plaintiff is, first, that the deed was entirely inoperative and nothing passed; or secondly, if anything passed, it was only an estate in mortgage. The argument of the defendant is, that an estate in fee passed.

In the first place, was the deed wholly inoperative? If so, it must be because the title of the trustees was extinguished before the conveyance by a payment of the debt. The debt was paid on the 12th of July, 1836, and the deed to Webster bears date, July 13th, the day following. If it be admitted that the mortgage title was extinguished by the payment of the debt, and that no reconveyance was necessary to revest the title in Spring, the mortgagor (Gray v. Jenks [Case No. 5,720]), it is still true that it is the payment of the debt that has the operation to revest the title in a mortgagor. Now the money was advanced by Webster, and the conveyance was made to him by the direction of Spring. The payment was the consideration of the deed, and in order to carry into effect the manifest intent of the parties, both must be considered as parts of one transaction, and the deed as operating

from the time of payment. If the deed bears a later date, so as to give time for the estate to revest in Spring before the execution of a deed, and thus defeat its operation, the day of the date must be considered as a mistake, otherwise it will operate as a fraud on Webster. Indeed King in his deposition, who fixes the day of the payment, says that it was the 12th of July, the day when the deed was executed. There is, therefore, no doubt either that King is mistaken in the day of the payment, or that there is a mistake in the date of the deed. The deed must, therefore, be considered as having an operation to convey whatever title was vested in the trustees.

What, then, was the title that was transferred? The plaintiff's argument is that, if anything, it was only a title in mortgage, at least, as to this lot; because there was no valid entry to foreclose the lot in question. If the deed operated merely as an assignment of the mortgage, then Webster, as mortgagee, had no interest in the land which could be taken on execution, and of course the defendant took nothing in this lot by the levy, however it might be with respect to the other lands set off. Blanchard v. Colburn, 16 Mass. 345; Eaton v. Whiting, 3 Pick. 484. The entry of the bank was into the mansion-house only, and the land in controversy is a separate lot, not adjoining the one on which the entry was made. Whether the entry was sufficient to operate on this lot, the facts being admitted, is a question of law, and if the case is properly before the court, it may as well decide the question sitting in equity as it may sitting as a court of law, and, in my opinion, it was sufficient. It was open and peaceable, and the only objection is, that a special entry was not made on this lot. But it is well-settled law, that where a party having title enters on one parcel in the name of all lying within the same county, it is a valid entry to give him seisin of the whole, unless there are several tenants in possession claiming a freehold in several parcels. Litt. Ten. § 417; Co. Litt. 252b; Green v. Liter, 8 Cranch [12 U. S.] 250. This lot, though not adjoining the mansion-house, was in the same town and in the possession of Spring. If the entry, then, was good to foreclose the mansion-house, it was good to foreclose the mortgage of this lot.

The entry on the land was made either on the 9th of May, or on the 9th of June, 1833, and the time of redemption expired as early, therefore, as the 9th of June, 1836. The title of the trustees, then, became a fee unless there was a waiver of their rights. It is said that if there was a foreclosure, the forfeiture was waived and the title brought back to a mortgage, by the trustees receiving, after the time for redemption had expired, other collateral securities for the debt. The argument proceeds on this ground, that as the foreclosure was by entry in the pres-

ence of witnesses, that is by matter in pais, it may be waived by matter in pais and the absolute title cut down to a mortgage, and that the trustees, by receiving additional securities for the debt after the foreclosure, virtually admitted and acknowledged their title to be a mortgage. Now if it be admitted that these securities might be received under such circumstances as would amount to a waiver of the forfeiture, and give the mortgagor further time to redeem. I think it difficult to be maintained that they might not have been deposited with the trustees under such circumstances and on such terms as would not amount to a waiver of the forfeiture; and King, who transacted the business, says in his deposition that he did not intend to do anything that would prejudice the rights of the trustees under the foreclosure. Taking, then, the case as it is put by the plaintiff's counsel, as this is a question of legal title depending on matters in pais, and to be determined on the weight and effect of evidence, if the evidence is not quite clear, it is precisely such a case as a court of equity is in the habit of sending to a jury. But without going into an examination of the evidence at large, it may be safely said that it is far from being clear and free from 'doubt in favor of the plaintiff, and, therefore, I think the defendant has a right to have his title submitted to a jury. If this bill, then, is to be considered as in the nature of a bill quia timet, and to be governed by the analogy of bills brought for the delivery up and cancelation of void instruments, my opinion is, that the defendant's title ought to be ascertained to be void, by a trial at law and the verdict of a jury, before a court of equity is called upon to enjoin him from setting it up.

But this suit appears to me to come more properly within the analogy of one species of another class of bills, technically called bills of peace. Of these bills, there are two species, one where a party is in possession of a right, which may be successively controverted by many persons, as a parson's claim of tithes, or a person claiming an exclusive right to a fishery, or claiming tolls. He may in a single bill, by making a sufficient number of persons parties who claim adversely, have his right established against the whole. 2 Story, Eq. Jur. § 854. Another case is where a person is in possession of lands and his possession is disturbed by another claiming title; he may in some circumstances maintain a bill, against the party that disturbs him, for the purpose of quieting his possession, and to enable him to have that undisturbed enjoyment to which in conscience and right he is entitled. The relief granted in such a case, is that which is prayed by the present bill.

But to maintain a bill of this kind, three circumstances must concur. The plaintiff must have the possession; that possession must have been disturbed; and his right

must have been previously established at law. It is not enough that he may fear that his possession may be disturbed, or that his right may be controverted or brought into litigation. This doctrine is clearly stated by Lord Redesdale, in the case of Devonsher v. Newenham, 2 Schoales & L. 208. Whenever a person, he says, claims title against another, who is in possession and his enjoyment disturbed, a suit may be entertained by the latter, for the purpose of quieting the possession, and he illustrates this doctrine by the case where several ejectment suits have been successively tried. In such cases, after the title has been sufficiently established at law, a bill of peace will be sustained and a perpetual injunction granted, to put an end to vexatious litigation. But he adds, "when the question is merely whether A or B is entitled to the property, and there has been no actual suit between them, there has been no instance where such a suit has been entertained." He refers to the case of Welby v. Duke of Rutland, 2 Brown, Parl. Cas. 39, as precisely in point, to show that a mere adverse claim, and that asserted by an act which does not disturb the possession and actual enjoyment of the party, is not a sufficient foundation for a bill, simply because it may at some future time bring a cloud over the plaintiff's title. In that case, Welby, the plaintiff, claimed a manor, of which he had the possession, and the Duke of Rutland, the defendant, also claimed title to it, and appointed a gamekeeper. It was said in answer to the bill, that if Welby was disturbed in his possession, he might bring an action and have his title established at law, and when that was settled have an injunction. But there must first be such a disturbance as would support an action, and then the title ascertained at law. The naked assertion of a title, or the doing an act in support of that assertion, which did not interfere with the plaintiff's possession and enjoyment of the property, would not authorize a court of equity to inquire into the foundation of the title and enjoin a party claiming adversely from prosecuting his rights at law.

The case of Welby v. Duke of Rutland, is precisely parallel to the case at bar, with this distinction against the present bill, that this plaintiff has not, and never has had the possession. Spring, a third person, has the possession, not holding under either of the parties to this suit, but so far as appears from the record, adversely to both. Both parties also set up titles, by which, if they have any rights, they have against him a right to the immediate possession. The object of this bill is to obtain a decree, not to quiet and protect the plaintiff's possession, nor to establish his own title against a number of persons who might in separate suits controvert it, but to have the defendant's title declared void as against him. It is, in fact, to have the court decide, which of these

two parties, each having the color of title, has the better right, when, for any which the court can say in this suit, a third party, who has the actual possession, may have a title paramount to both. The defendant might, with just as good cause, file a bill against the plaintiff, and with precisely the same reason ask the same relief against him. He might allege that the deed of 1882, threw a cloud over his title, and ask the court to declare that deed void and inoperative to affect his rights, and that he might be enjoined from setting it up. To sustain a bill under such circumstances would, I apprehend, be a perfect novelty in jurisprudence. If the plaintiff were in actual possession of the land, and the defendant threatened to disturb him by setting up a paramount title, this bill could not be maintained, unless his possession and enjoyment had been actually disturbed, and his title established by a suit at law. The only bill which the plaintiff would then be entitled to, would be a bill not to establish his title, but to perpetuate the testimony, if there were danger of its being lost. But even such a bill he could not maintain, without first obtaining the possession. Then, being in possession and not having the power to bring a suit at law to have the right determined, if his title was denied and he was in danger of having it litigated at a future time, when his proof might be lost by the deaths of witnesses, he would be entitled to a bill to perpetuate the testimony. 2 Story, Eq. Jur. § 1002; Angell v. Angell, 1 Sim. & S. 83; Lord Dursley v. Fitzhardinge, 6 Ves. 251, in which all the cases on perpetuating testimony are critically examined. Jervis v. White, 7 Ves. 413. My opinion is that the bill must be dismissed with costs for the defendant.

[See Case No. 12,707.]